UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| COUNTRY INNS & SUITES BY CARLSON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-624-SEB-DML |
| | ) | |
| NAYAN, LLC and RAVINDRA PATEL, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

This cause is before the Court on the Motion for Preliminary Injunction [Docket

No. 21], filed by Plaintiff, Country Inn & Suites By Carson, Inc. ("Country Inn"), on June

20, 2008, pursuant to Federal Rule of Civil Procedure 65(a) and Local Rule 65.2.

Plaintiff requests that the Court preliminarily enjoin Defendants, Nayan, LLC ("Nayan")

and Ravindra Patel, from continuing to use the Country Inn & Suites By Carlson® 

trademark and other Country trademarks, service marks, and trade dress (collectively, the

"CIS Marks") or any other mark which is similar to any of the CIS Marks in connection

with the operation, promotion, or advertising of any business including the hotel located

at 7960 North Shadeland Avenue, Indianapolis, Indiana ("the Hotel").  Plaintiff also

requests that the Court direct Defendants to immediately remove any interior and exterior

signs or advertising materials using the CIS Marks at the Hotel and any other location and

comply with all other post-termination obligations under Article 19 of the parties' License

Agreement.  For the reasons detailed in this entry, we <u>GRANT</u> Plaintiff's motion for injunctive relief.

## Factual Background

### *The Country Inn & Suites By Carlson® Franchise System*

Country Inn is a licensor of guest lodging systems, including the Country Inn & Suites By Carlson® franchise system, and owns the Country Inn & Suites By Carlson® trademark and other trademarks, service marks, logos, and trade dress (collectively, the "CIS Marks").  Am. Compl. ¶¶ 5, 20, 22; Exh. A.  Country Inn & Suites System Hotels ("CIS System Hotels") are characterized by the company's "system" (the "CIS System"), which includes distinctive residential architecture and home-like interior design, a unique color scheme, and furnishings; uniform standards, specifications, and procedures for operations; quality and uniformity of products and services offered; procedures for inventory and management control; training and assistance; and advertising and promotional programs.  Am. Compl. ¶¶ 21-22.

Over 400 franchised CIS System Hotels exist and operate throughout the United States and abroad and franchisees are given a license from Country Inn that allows them to use the CIS Marks and CIS System in order to properly operate their CIS System Hotels.  <u>Id.</u> ¶ 24.  To ensure the quality and consistency of services available in CIS System Hotels, Country Inn also provides its franchisees with standards and operational procedures, training concerning the operation of CIS System Hotels, and ongoing operational support and assistance.  <u>Id.</u> ¶ 26.

***Defendants' Obligations Under the Parties' License Agreement***

Defendants, Nayan and Mr. Patel, own, operate, and manage hotel properties.  Id. ¶
6.  Nayan is a family business incorporated and doing business in the State of Indiana.
Ravindra Patel Affidavit ("Patel Aff.") ¶¶ 2-3.  On December 19, 2003, Country Inn
entered into a fifteen year License Agreement with Defendants which granted Mr. Patel
the non-exclusive license to operate the hotel located at 7960 North Shadeland Avenue,
Indianapolis, Indiana, as a CIS System Hotel.  Id. ¶ 5; see also Exh. B (License
Agreement).  On that same day, Mr. Patel personally guaranteed the License Agreement,
promising that he would make full and prompt payment to Country Inn of all amounts due
or payable under the License Agreement and that he would timely perform all post-
termination obligations as required upon termination of the License Agreement.  Am.
Compl. ¶ 29; Exh. C.

Articles 3.1 and 3.2 of the License Agreement provide that, as between Defendants
and Country Inn, Country Inn owns the CIS Marks and the CIS System as they currently
exist and as they may be modified in the future.  Defendants agreed to the limited nature
of the license granted, as defined in Article 3.3 of the License Agreement, which provides
that Defendants are permitted to use the CIS Marks, trade dress, and other distinctive
features associated with the franchise only in accordance with the CIS System.  Article 5
of the License Agreement addresses payments Defendants are required to make to
Country Inn, which include a royalty fee equal to 4.5% of daily gross room revenues (set

forth in Article 5.2); a marketing fee equal to 2.5% of daily gross room revenues (set forth in Article 5.3); and a reservation fee equal to 1.25% of gross room revenues, plus an additional fee for each reservation delivered through Third Party Systems (set forth in Article 5.4).  Under Article 5.8 of the License Agreement, payments that Defendants fail to make when due bear interest at the lessor of one and one-half percent per month or the maximum rate of interest permitted by applicable law.  See Exh. B.

The parties agreed that certain events would constitute a material default of the License Agreement which would entitle Country Inn to terminate the license if Defendants failed to timely cure the defaults.  Am. Compl. ¶ 35.  Unless otherwise provided for in the License Agreement, the cure period for any default was thirty days from Defendants' receipt of the notice.  However, the License Agreement provided that the cure period applicable to a failure to pay any past due fees or other amounts owed to Country Inn or its affiliates was ten days after Defendants' receipt of the overdue notice. Id. ¶ 36.  Because the parties agreed that, if the License Agreement were terminated, the actual damages Country Inn would suffer would be difficult if not impossible to ascertain, the License Agreement included a liquidated damages clause requiring Defendants to pay a reasonable estimate of the probable damages the Country Inn would suffer for the loss of prospective fees and other amounts payable under Article 5.  Id. ¶ 37.  Further, pursuant to Article 25.13, all reasonable and necessary costs and expenses, including attorneys' fees, incurred by Country Inn in enforcing any provision in the License Agreement, are to be paid to the prevailing party in any such action.  Exh. B.

***Post-Termination Obligations of License Agreement***

Under Article 19 of the License Agreement, upon termination, the licensee's

obligations are as follows:

19.1 <u>Licensee's Obligations</u>.   Upon the expiration or termination of this Agreement, Licensee will immediately do the following, without limitation:

(a)   Pay all amounts due and owing to Country and its Affiliates . . . .

(b)   Stop using the Marks and the System, stop Operating the Hotel as a System Hotel, and stop representing the Hotel to the public or holding it out as a System Hotel or a former System Hotel. Licensee will accomplish this by, without limitation, removing, returning or destroying, as instructed by Country: (i) the Operating Manuals, any Confidential and Proprietary System Information, Marketing materials, HARMONY and Gold Points Equipment, and all other printed materials containing the Marks; (ii) all interior and exterior signs, OS&E, FF&E and other items containing the Marks; and (iii) anything else that might reasonably result in customers continuing to identify the Hotel as a system Hotel, including, modifying the exterior and interior appearance of the Hotel so that it will be easily distinguished from the standard appearance of a System Hotel.   The modifications include: (1) removing exterior shutters and lattice and replace with standard architectural grill; (2) carpeting or otherwise completely covering the wood floor in the lobby; (3) removing or painting over the wallpaper border and any stencil artwork in the lobby and each guestroom; (4) removing the Country-designated decorative signature wall piece at the front desk; and (5) removing room number and directional signs. Licensee will cover up anything bearing the Marks or otherwise identified as being associated with the System that cannot reasonably be removed on or before the expiration or termination date, until it can be removed.

Exh. B.  Article 23.1 of the License Agreement provides that:

A breach of this Agreement by Licensee, which relates to any of the matters

5

set out below, will cause irreparable harm to Country for which monetary damages are an inadequate remedy.  Therefore, in addition to any other remedies Country has under this agreement, Country may seek and obtain the entry of temporary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement with respect to: (i) the Marks; (ii) the System; (iii) the obligations of Licensee upon termination or expiration of this Agreement; (iv) Transfers; (v) Proprietary and Confidential System Information; and (vi) any act or omission by Licensee or Licensee's employees that (a) constitutes a violation of any Legal Requirement; (b) is dishonest or misleading to guests of the Hotel or other System Hotels; (c) constitutes a danger to the employees or guests of the Hotel or to the public; or (d) may impair the good will associated with the Marks or the system.

Id.

### *Defendants' Default Under the License Agreement*

On March 9, 2007, Country Inn provided Mr. Patel a "Notice of Default" regarding his failure to timely pay amounts owed to Country Inn, pursuant to the terms of the License Agreement, and instructing Mr. Patel that he had until March 23, 2007, to cure the defaults and avoid termination.  Am. Compl. ¶¶ 41-42; Exh. D.  By September 26, 2007, Mr. Patel still had not paid the amounts he owed to Country Inn.  However, rather than terminating the License Agreement, on that date Country Inn instead sent Mr. Patel an "Extension and Revision of March 9, 2007, Notice of Default, New Default Notice and Promissory Note," offering Mr. Patel the option either to immediately pay Country Inn the outstanding amounts owed to cure the defaults or to enter into a Promissory Note and Personal Guaranty, which, if executed, would extend the cure period to the earlier of: (1) the first missed payment under the Promissory Note; (2)

transfer or assignment under Article 20; (3) failure to remit fees and amounts that become

due under the License Agreement; or (4) March 10, 2009.  Am. Compl. ¶¶ 43-33; Exh. E.

On October 12, 2007, Defendants executed the Promissory Note and Personal Guarantee

and Country Inn ceased the ongoing efforts to terminate the License Agreement.  Am.

Compl. ¶ 45; Exh. F (Promissory Note and Personal Guarantee).

Due to Mr. Patel's subsequent failure to make timely or complete payments under

the Promissory Note,[1] on December 20, 2007, Country Inn provided Defendants with a

"Notice of Failure to Cure Default and Notice of Termination."  Am. Compl. ¶¶ 46-47.  In

that notice, Country Inn informed Defendants that as of March 20, 2008, the License

Agreement would be terminated and Defendants would no longer have the right to use the

CIS Marks and CIS System, to continue to operate the Hotel as a CIS System Hotel, or to

represent the Hotel to the public as such.  See Exh. G.  However, on March 26, 2008,

Country Inn once again provided Defendants an "Extension of Termination Date," which

granted Mr. Patel's request to extend the effective termination date to April 18, 2008, as

long as he executed and returned a copy of the Extension of Termination Date.  Am.

Compl. ¶ 49; Exh. H (Notice of Extension of Termination Date).  Country Inn further

advised Defendants that, upon termination, they were required to comply with Article

19.1 of the License Agreement, including fully de-identifying the Hotel and paying

---

[1] Defendants contend that they made periodic payments to Country Inn throughout the
relevant time period, but admit that they were consistently delinquent in their payments.  Patel
Aff. ¶¶ 6, 8, 10, 11.

Country Inn no later than April 28, 2008, amounts past due, estimated fees through the

date of termination, and liquidated damages.  Am. Compl. ¶ 50.


***Events Following Termination of the License Agreement***

As provided in the Extension of Termination Date, the License Agreement

between Country Inn and Defendants was terminated effective April 18, 2008.  Id. ¶ 52.

On April 21, 2008, Country Inn representatives inspected Defendants' Hotel and

discovered that Defendants had failed to comply with the post-termination requirements

set forth in Article 19 of the License Agreement and were still using the CIS Marks and

other items associated with the CIS System.  Id. ¶ 53.  Thus, on April 23, 2008, Country

Inn sent Defendants a written "Notice of Unauthorized Use of Country's Marks and

Failure to De-Identify the Hotel," which informed Defendants that if they did not comply

with their obligations under Article 19 the License Agreement and immediately

discontinue use of the CIS Marks and CIS System, Country Inn would initiate legal action

to enforce its rights.  Id. ¶¶ 54-55; Exh. J.

On May 14, 2008, Country Inn filed its complaint in this action, contending that

Defendants breached their obligations under the License Agreement by failing to pay fees

and liquidated damages due to Country Inn, as well as failing to comply with their post-

termination obligations as set forth in Article 19 of the License Agreement.  Country Inn

further alleges that Defendants' actions constitute federal trademark infringement, false

designation of origin, and unfair competition.  On June 20, 2008, Country Inn filed its

Motion for Preliminary Injunction, requesting that the Court enjoin Defendants from continuing to use the CIS Marks and CIS System in connection with the operation of any business, including the Hotel located at 7960 North Shadeland Avenue, Indianapolis, Indiana, and order Defendants to immediately comply with their post-termination obligations set forth in Article 19 of the License Agreement.

Defendants concede that they are delinquent in their payments to Country Inn, but contend that injunctive relief is premature because they are currently in the process of negotiating a remedy[2] with a Country Inn representative, John Malone, and that granting a preliminary injunction now would devastate their business and livelihood.  Patel Aff. ¶¶ 13, 15.  They further argue that, because Country Inn has only suffered financial damage and has not shown a loss of goodwill, it is unable to demonstrate that it is suffering irreparable harm for which it has no adequate remedy at law.

## <u>Legal Analyis</u>

### I.      Standard of Review

A party seeking a preliminary injunction must demonstrate that "1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the

---

[2] Defendants assert that they are currently in the process of refinancing another property "and intend to cure any and all arrearage owed by Defendants to Plaintiffs."  Patel Aff. ¶ 14.

preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest." St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. 2007).  "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied."  Coronado v. Valleyview Public School Dist. 365-U, 537 F.3d 791, 794-95 (7th Cir. 2008) (citing Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006)).

## II.    Discussion

Defendants do not challenge Country Inn's contentions that it is reasonably likely to succeed on the merits of its trademark infringement case and that a preliminary injunction will not harm the public interest.  Therefore, we address these prongs only to the extent necessary to support our discussion of the disputed prongs of the preliminary injunction analysis, to wit, whether Country Inn has shown that it is experiencing irreparable harm for which it lacks an adequate remedy at law that exceeds any harm Defendants would suffer if the injunction issues.

### A.    Likelihood of Success on the Merits

The Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq*., creates a

10

cause of action for trademark infringement for the use of a symbol, name, term or device that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1).  In its request for a preliminary injunction, Country Inn asserts that Defendants' continued use of the CIS Marks following the termination of the License Agreement constitutes trademark infringement, in violation of the Lanham Act.

We agree with the parties that Country Inn is likely to prevail on its claim of trademark infringement.  It is well-established under Seventh Circuit law that, "[i]f the owner of the trademark has broken off business relations with a licensee, he cannot ensure the continued quality of the (ex-)licensee's operation, whose continued use of the trademark is therefore a violation of trademark law."  Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 435 (7th Cir. 1989).  Here, Defendants do not dispute that they violated the terms of the License Agreement by failing to make required payments, that on April 18, 2008, Country Inn terminated the License Agreement because of Defendants' defaults, and that they have continued to use the CIS Marks and CIS System since the termination of their license rights.  Further, Defendants do not contend that Country Inn improperly terminated their license rights or otherwise acted inappropriately under the License Agreement.  Thus, we find that Country Inn has clearly met its burden of demonstrating that it has a "better than negligible" chance of succeeding on the merits.  See, e.g., Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 897 (7th Cir. 2001)

("[The plaintiff] need only demonstrate at the preliminary injunction stage that it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified.").

### B.    Irreparable Harm

Although they do not contest that Country Inn is likely to succeed on the merits of its trademark infringement claim, Defendants nevertheless contend that Country Inn cannot show irreparable harm in this case because Defendants' default under the License Agreement was solely a monetary one.  Defendants argue that Country Inn has made no showing that Defendants' continued use of the CIS Marks and CIS System is actually harming Country Inn's goodwill and reputation.  Thus, Defendants contend that their consumers can be "confused" about nothing more than whether Defendants have paid their required fees to Country Inn and are an authorized licensee of Country Inn, which, according to Defendants, does not constitute irreparable harm.[3]

_____

[3] In support of this proposition, Defendants cite what they contend is the Second Circuit Court of Appeals's decision in <u>Church of Scientology International v. Elmira Mission of the Church of Scientology</u>, 794 F.2d 38 (2d Cir. 1986).  However, the quotation Defendants cite is actually from the District Court of New York's opinion, in which the court found that if the defendant were allowed to continue its allegedly infringing use of the plaintiffs' trademarks, "some consumers might be 'deceived' or 'confused' at most into believing that the [defendant] has paid up all of its debts to the [plaintiffs].  That sort of 'confusion' may well be actionable as a trademark violation, but it obviously poses absolutely no danger of irreparable harm to the goodwill and reputation enjoyed by the plaintiffs' trademarks."  <u>Church of Scientology Int'l v. Elmira Mission of the Church of Scientology</u>, 614 F. Supp. 500, 506-507 (D.C.N.Y. 1985), <u>rev'd</u>, 794 F.2d 38 (2d Cir. 1986).
      However, on appeal, the Second Circuit reversed the District Court's opinion, holding
(continued...)

Seventh Circuit precedent does not support Defendants' argument, however. "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.  Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another."  Re/Max North Cent., Inc. v. Cook, 272 F.3d 424, 432 (7th Cir. 2001) (quoting International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988)).  Thus, it is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, *even absent a showing of business loss*."  Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992) (citations omitted) (emphasis added); see also Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution.").  This presumption "is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damages to reputation and loss of goodwill, caused by such violations."  971 F.2d at 16.

We find no reason in this case to deviate from the Seventh Circuit's well-settled presumption that irreparable harm generally follows from trademark infringement.

---

[3](...continued)

that, "To support its denial of injunctive relief, the district court stated that appellants had not established that defendants had *in fact* reduced the reputation associated with the marks.  On the contrary, without a preliminary injunction, appellants will be unable to control the use of their mark by unauthorized licensees; the mere possibility that defendant could during the interval until trial depart from [the licensor's standards] is sufficient to warrant the issuance of a preliminary injunction."  794 F.2d at 44.

Because Defendants are using Country Inn's exact marks and trade dress, the confusion at issue in this case is not easily dispelled.  Thus, there is a high risk of lingering confusion which could result in an irreparable loss of customers when patrons looking for Country Inn's services are confused into believing that Defendants are a licensed distributor of those services.  By the time such customers realize that they are not dealing with a licensed distributor (assuming that they ever make that discovery), many individuals likely will not bother to leave Defendants' hotel, or if they do, to seek out another Country Inn hotel.  Furthermore, there is a risk that, if Defendants fail to provide the quality of services customers expect from a Country Inn hotel, the customers' confusion could discourage them from seeking lodging at other Country Inn hotels in the future.  In light of these facts, we are unable to find that this is a rare case in which irreparable harm does not follow from trade infringement.

Defendants also contend that Country Inn cannot claim it is suffering irreparable harm because it waited more than a year after Defendants' initial default on March 9, 2007, before terminating the License Agreement on April 18, 2008.  It is true that the Seventh Circuit has recognized that "delay in moving for a preliminary injunction has been considered by some courts in assessing the probability of irreparable injury."  Ideal Industries, Inc. v. Gardner Bender, Ind., 612 F.2d 1018, 1025 (7th Cir. 1979) (citations omitted).  However, here, there has been no such delay.  Although Country Inn did provide Defendants with a number of extensions and opportunities to cure their defaults *before* terminating their license, that is not the relevant time period for our consideration.

14

Because the irreparable harm Country Inn contends that it is suffering is a result of the

allegedly infringing use of its CIS Marks by Defendant, that harm could not have begun

until *after* Country Inn terminated the License Agreement on April 18, 2008.  Country Inn

has proceeded expeditiously in seeking judicial relief since that date, as evidenced by the

filing of its complaint seeking injunctive relief on May 14, 2008, less than one month

after termination, and the filing of its motion for preliminary injunction on June 20, 2008,

after failing to reach an agreement with Defendants regarding a consent injunction.  Thus,

we conclude that there has been no delay on the part of Country Inn that we need address

as part of our irreparable harm analysis.


**C.     Inadequate Remedy at Law**

Defendants contend that, because the parties previously negotiated the amount of

damages due to Country Inn upon Defendants' breach of, or Country Inn's termination of,

the License Agreement,[4] Country Inn has an adequate remedy at law, and thus, is not

---

[4] Article 17.4 of the License Agreement provides:

Liquidated and Other Damages.  If this agreement is terminated because of
Licensee's default, the actual damages that Country would suffer for the loss of
prospective fees and other amounts payable to Country under Article 5 would be
difficult if not impossible to ascertain.  Therefore, if this Agreement is terminated
because of Licensee's default, Licensee within 10 days of such termination will pay
to Country as liquidated damages and not as a penalty a reasonable estimate of the
probable damages that Country would suffer for the loss of prospective fees and
other amounts payable under Article 5, calculated as follows: (i) three times the
Royalty and Marketing Fees payable to Country under Sections 5.2 and 5.3 for the
12 months of the Hotel's Operation as a System Hotel immediately preceding the

(continued...)

entitled to injunctive relief.  Country Inn rejoins that the liquidated damages provision in the License Agreement addresses only one component of the actual damages it is suffering as a result of Defendants' breach (i.e., loss of prospective license fees) and does not address the harm associated with a loss of goodwill and reputation Country Inn is suffering as a result of Defendants' continued use of the CIS Marks and CIS System, for which there is no adequate remedy at law.

As discussed above, Defendants' unauthorized use of the CIS Marks and the CIS System causes injury to Country Inn's trademarks and goodwill that cannot be accurately measured or adequately compensated in monetary damages.  Additionally, Defendants are profiting from the use of the CIS Marks and CIS System, which would require the court to engage in a speculative disgorgement calculation should Country Inn prevail at trial. Thus, we find that Country Inn has demonstrated that it has no adequate remedy at law for the irreparable harm it is suffering.

---

[4](...continued)
date of termination of this Agreement; or (ii) if the Hotel opens as a System Hotel but has not been Operating as a System Hotel for 12 months before the date of such termination, 36 multiplied by the average monthly Royalty and Marketing Fees payable to Country under Sections 5.2 and 5.3 through the date of termination; or (iii) if the Hotel fails to open as a System Hotel, $1,000.00 multiplied by the number of guestrooms required in Section 1.1.  Licensee will also pay taxes on such payment in accordance with Section 5.9.

Exh. B.

**D.     Public Interest**

The parties do not dispute that the public interest will not be harmed if the

injunction issues.  Under Seventh Circuit law, in trademark cases, "the relevant

consideration [in determining whether the public interest will be disserved by the grant of

an injunction] is the consumer's interest in not being deceived about the products they

purchased."  International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d

1079, 1092 n.8 (7th Cir. 1988) (quoting A.J. Canfield Co. v. Vess Beverages, Inc., 796

F.2d 903, 909 (7th Cir. 1986)).  As we discussed above, there is a likelihood of confusion

among the public with respect to whether or not Defendants' hotel is associated with the

Country Inn & Suites By Carlson® franchise system, and thus, the public interest will

actually be served, not harmed, by the issuance of the injunction.


**E.     Balance of Harms**

Finally, the Court must determine whether the irreparable harm Country Inn will

suffer if it is not afforded injunctive relief outweighs any harm to Defendants if the

injunction is issued.  This determination requires the court, first, to assess the plaintiff's

chance of success and then to balance the hardships accordingly.  "Initially, the court only

needs to determine that the plaintiff has some likelihood of success on the merits.

However, at the balancing stage, the court must determine how great the moving party's

likelihood of success on the merits is in order to properly balance the potential harms."

Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 896 (7th Cir. 2001) (quoting Storck USA,

L.P. v. Farley Candy Co., 14 F.3d 311, 314 (7th Cir. 1994)).  Because Country Inn has demonstrated a significant likelihood of success on the merits here, "the 'sliding scale' of the balancing test does not require as strong a showing on the balance of harms analysis as it would otherwise."  Intelecom, Inc. v. Mongello, 2008 WL 1819141, at *7 (S.D. Ind. April 22, 2008) (citations omitted); see also Lineback v. Frye Elec., Inc., 539 F. Supp. 2d 1111, 1119 (S.D. Ind. 2008) ("[A] strong showing as to the [plaintiff's] likelihood of success will permit a weaker showing as to the balance of harms posed by the grant or denial of interim injunctive relief.") (quotations omitted).  With that determination in mind, we proceed to balance the harms between the parties.

According to Defendants, the business they conduct pursuant to their license agreement with Country Inn represents approximately forty percent of their family business.  Patel Aff. ¶ 15.  They claim that the injunction Country Inn requests would be devastating to their business, would require them to lay off employees, and would detrimentally affect Defendants' current patrons as well as future patrons who have already made reservations for lodging.[5]  While we are mindful of the hardships Defendants claim they will suffer, we are not persuaded that the injunctive relief

_____

[5] On July 3, 2008, Mr. Patel testified by affidavit that Defendants were in the process of refinancing another property in order to cure any arrearage they owe to Country Inn, that he anticipated that the refinance process would be completed within thirty days, and that, in anticipation of the refinancing, Defendants were working with Country Inn to negotiate a remedy.  Patel Aff. ¶¶ 13-14.  Based on that testimony, Defendants contend that injunctive relief would be premature at this point.  However, Country Inn denies that it is working with Defendants as they claim and the Court has received no notice from either party that any settlement has been reached that would moot Country Inn's request for injunctive relief.

18

requested by Country Inn would be as devastating to Defendants' business as they contend.  The injunction would not prohibit Defendants from continuing to operate their hotel for current guests or prevent them from providing lodging and hospitality services to future guests.  They simply must do so without the use of the CIS Marks.  Thus, the injunction would still allow Defendants to remain at the same location and continue to operate their hotel, either independently or by contracting with another hotel chain if they so choose.

On the other side of the scale lies the harm to Country Inn.  As discussed above, Country Inn has a substantial interest in the goodwill it has in the CIS Marks, and while Defendants continue to use the CIS Marks and CIS System despite the termination of their license agreement, Country Inn has no control over the services Defendants provide or the potential harm to its goodwill.  Furthermore, the public clearly has an interest in knowing whether it is in fact dealing with a licensed distributor of Country Inn.  Taking the above facts into consideration, coupled with the strong likelihood of success on the merits demonstrated by Country Inn, we find that the balance of harms in this case favors Country Inn.  For the foregoing reasons, we <u>GRANT</u> Country Inn's Motion for Preliminary Injunction.

**F.    Security**

Federal Rule of Civil Procedure 65(c) provides in relevant part that, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant

gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R.

Civ. Pro. 65(c).  Under Seventh Circuit law, because "the amount of the security rests

within the discretion of the district judge, the matter of requiring a security in the first

instance [is] recognized . . . as also resting within the discretion of the district judge."

Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972) (holding that the district court did

not abuse its discretion in failing to require the plaintiffs to post a security when the

plaintiffs showed a strong likelihood of success on the merits).  Considering that Country

Inn is a corporation in good standing and has made a strong showing that it is likely to

succeed on the merits of its trademark infringement claim, we find that the posting of

security is unnecessary in this case.


### III.    Preliminary Injunction Entry and Order

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants

are hereby ENJOINED from taking the following actions or in the alternative ORDERED

to take the following actions:


1.    Defendants, Nayan LLC and Ravindra Patel, and their agents, servants, employees,

attorneys, and all others in active concert or participation with them, are hereby

preliminarily ENJOINED from continuing to use or employ the Country Inn &

Suites By Carlson® trademark and other Country trademarks, service marks, and

trade dress (collectively, "the CIS Marks"), or any other name, designation, or mark which is deceptively similar to, or likely to cause confusion with, any of the CIS Marks in connection with the operation, promotion, or advertising of any business including the Hotel located at 7960 North Shadeland Avenue, Indianapolis, Indiana ("the Hotel").

2.     Defendant, Ravindra Patel, is hereby ORDERED to inform his agents, servants, employees, and all others in active concert or participation with him of the issuance of this preliminary injunction to ensure their compliance with this Order. Steps to inform shall be undertaken immediately and shall include distribution of a written notice and a copy of this order as well as a prominent posting of the order in a place readily reviewable by said employees and agents.

3.     Defendants, Nayan LLC and Ravindra Patel, are hereby ORDERED to remove Country Inn & Suites By Carlson® indicia from all public references, including all printed materials, forms, brochures, fliers, invoices, receipts, etc., and telephone listings for the Hotel, as well as the Hotel's website, if any.

4.     Defendant, Nayan LLC, is hereby ORDERED to immediately comply with the post-termination obligations as defined in Article 19 of the License Agreement, including removing any interior and exterior signs or advertising materials using

21

the CIS Marks at the Hotel, or any other location, and ceasing to use any of the

telephone and facsimile numbers formerly associated with the Hotel.


5.      Within ten (10) days from the date of this Order, Defendants, Nayan LLC and

Ravindra Patel, are hereby ORDERED to permit Country Inn representatives full

and unfettered access to the Hotel to assure that all Country Inn & Suites By

Carlson® references, including trademarks, signage, stationery, brochures, etc.,

have been removed and/or surrendered to Country Inn.  Within five (5) days after

Country Inn's inspection, the parties are hereby ORDERED to file with the Court

an agreed, written status report setting forth in detail the manner and form in which

Defendants have complied with this preliminary injunction.


This order shall remain in full force and effect until further order of the Court.

        IT IS SO ORDERED.


Date:  _____10/28/2008_____                _____

                                                       SARAH EVANS BARKER, JUDGE
                                                       United States District Court
                                                       Southern District of Indiana

22

Copies to:

Bryce H. Bennett Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com

Elizabeth Chitty Green
RILEY BENNETT & EGLOFF LLP
egreen@rbelaw.com

John Andrew Hovanec
hovanec.john@gmail.com

Kirk W. Reilly
GRAY PLANT MOOTY MOOTY & BENNETT, P.A.
kirk.reilly@gpmlaw.com